UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CELESTE A. JONES<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security<br><br>    Defendant. | 3:10-cv-00722 -ST<br><br>FINDINGS AND RECOMMENDATION |

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Celeste A. Jones ("Jones"), seeks judicial review of the Social Security Commissioner's final decision denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"). This court has jurisdiction under 42 USC § 405(g). For the following reasons, the Commissioner's decision should be reversed and remanded for further proceedings.

///

///

1 - FINDINGS AND RECOMMENDATION

**PROCEDURAL BACKGROUND**

Jones first filed an application for SSI on January 18, 2000, alleging disability as of January 1, 1997, later amended to January 11, 2002. Tr. 59.[1] Administrative Law Judge ("ALJ") Dan Hyatt issued a decision on May 9, 2003, finding Jones disabled for the closed period from January 11, 2002 to May 1, 2003, for mental impairments. Tr. 30, 61. Her disability ceased on May 1, 2003, due to medical improvement, and Jones did not appeal the decision. Tr. 30. Her payments were terminated as of July 31, 2003. *Id.*

Jones again applied for SSI in 2004, alleging disability since January 1, 1998. Tr. 30, 530-39. This application was denied on July 6, 2004. Tr. 30. Jones did not request reconsideration. *Id.*

On January 25, 2005, Jones protectively filed the current application for SSI, alleging disability beginning January 1, 1998.[2] Tr. 30, 525-29. This claim was initially denied on April 15, 2005, and again upon reconsideration on August 5, 2005. Jones appeared and testified at a hearing before ALJ Catherine Lazuran on November 7, 2007, without the assistance of an attorney or other representative because she thought it was too late to retain such assistance. Tr. 1110-16. The ALJ offered additional time, but Jones declined. Tr. 1113.

"Because of the question of possible re-opening" of her 2004 application, the ALJ considered the question of Jones' disability only since January 20, 2004.[3] Tr. 30. In her decision issued on June 27, 2008, the ALJ found that Jones was not disabled. Tr. 30-41. The Appeals

---

[1] Citations are to the page(s) indicated in the official transcript of record filed on December 10, 2010 (docket #11).
[2] Jones did not appeal from the 2003 decision granting her benefits for the closed period from January 11, 2002, through May 1, 2003. Res judicata principles apply in the context of social security applications and appeals. *Chavez v. Bowen*, 844 F2d 691, 693 (9th Cir 1988). Absent "changed circumstances," a claimant cannot raise an issue that has previously been litigated. Id. Although Jones's current application alleges disability from 1998 through the present, any award of benefits is limited to the period after May 1, 2003.
[3] "A determination, revised determination, decision or revised decision may be reopened . . . within 12 months of the date of the notice of the initial determination for any reason." 20 CFR § 404.988(a).

Council denied review on May 28, 2010. Tr. 10-12. Therefore, the ALJ's decision is the final decision of the Commissioner subject to review by this court. 20 CFR § 410.670a.

## BACKGROUND

Born in 1960, Jones was 48 years old on the date of the decision. Tr. 29, 525. She alleges disability beginning on January 1, 1998, based on the combined impairments of back pain, migraines, and mental illness. Tr. 531.

### I. Medical Records

The record contains medical reports and evaluations supporting Jones's prior award of SSI due to severe mental impairments, including drug abuse/addiction in remission, major depression, rule out post-traumatic stress disorder ("PTSD"). Tr. 61, 662 (2/26/2000), 669 (11/09/2001), 680 (5/30/2002), 691 (11/11/2002), 730 (4/6/2002). Jones medically improved by May 1, 2003, and regained the functional capacity to perform a wide range of medium, light, and sedentary jobs. Tr. 61. For the relevant time period at issue here beginning January 20, 2004, the record contains additional medical reports and evaluation concerning her mental and physical impairments

Beal Essink, M.D., completed a psychiatric evaluation of Jones on June 3, 2004. Tr. 745-51. She concluded that Jones:

> endorses chronic, moderate major depressive episodes without interepisode recovery, and I feel that her depressive symptoms are probably best characterized as a Major Depressive Disorder of moderate severity. . . . The claimant does endorse some symptoms of PTSD, although she does not endorse prominent avoidant symptoms of PTSD currently. I would suspect that she did meet criteria for [PTSD] in the past, but she currently does not meet criteria for this disorder.

Tr. 750.

3 - FINDINGS AND RECOMMENDATION

Also in 2004, Jones saw Shane Dunaway, M.D., after twisting her ankle. Tr. 1087. She requested a release for light duties on her work crew. *Id*. Dr. Dunaway declined, stating that Jones "is trying to tell me she had some chronic back problems that prohibited her for [*sic*] doing this. I have no evidence in the chart of this and therefore I declined." *Id.*

On January 12, 2005, Jones was hospitalized for suicidal thoughts and reported that she had experienced worsening depression over the past few months. Tr. 781. She had stopped taking her medications. *Id.* She was discharged on January 21, 2005, after her mood improved and she resolved suicidality. *Id.* Shirley Roffe, M.D., completed a psychiatric evaluation on January 28, 2005, and gave Jones a GAF of 45.[4] Tr. 904-07. Nurse Practitioner Catherine Owen gave Jones the same GAF score in February 2005. Tr. 902-03.

In August 2005, medical records report that Jones was "going to detox." Tr. 1078.

## II. Hearing Testimony

At the hearing on November 7, 2007, Jones described her past work, including various fast food restaurants, which never lasted more than a few months. Tr. 118-24. She also worked as a telemarketer and caregiver for short periods of time. Tr. 1124-25.

Jones testified that she suffers from anxiety attacks which interfere with her ability to work. Tr. 1132. When she gets anxious around people, she will either quit or get fired. *Id*. She did not have anxiety attacks when she was using drugs. Tr. 1150-51. Her physical pain also interferes with working. Both standing and sitting bother her back and she cannot lift. Tr. 1132. Her back pain has worsened since January 2005, but over-the-counter-medications help.

---

[4] "GAF" refers to the Global Assessment of Functioning scale used by mental health professionals to rate patients' "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Ed. Text Revision (*DSM-IV-TR),* American Psychiatric Ass'n, p. 34. A GAF of 45 is in the range indicating "Serious symptoms (*e.g.,* suicidal ideation, severe obsessional rituals, frequent shoplifting) OR [a]ny serious impairment in social, occupational or school functioning (*e.g.,* no friends, unable to keep a job.)." *Id.*

4 - FINDINGS AND RECOMMENDATION

Tr. 1134. Jones testified that she could stand four hours total in an eight-hour day and sit for an hour at a time, for a total of three hours. Tr. 1133.

In the past, Jones has been in residential treatment for alcohol abuse and drug use, specifically cocaine. At the hearing, she reported she has been clean since detox in January 2005 and had no alcohol since July 15, 2006. Tr. 1147-149. However, she also indicated that in late 2006, she was in a rehabilitation home where she worked as a prep cook and helped with balloting during election. Tr. 1138-142.

Jones helps care for her grandson, walks a little with him, goes to church, reads, does not engage in hobbies, and uses public transportation. Tr. 1152-156.

### III.  Testimony of Vocational Expert

Vocational Expert ("VE") Nancy Bloom testified at the hearing. Tr. 1158-165. The ALJ posed a hypothetical claimant with the following limitations: able to lift 20 pounds occasionally and 10 pounds frequently; can stand or walk for six hours and sit for six hours in a workday; can occasionally climb ropes, ladders, or scaffolds; and can occasionally kneel, crouch, crawl, and stoop. Tr. 1161. Based on these limitations, the VE concluded that the worker could perform Jones's past work as fast food worker, receptionist, telephone solicitor, cashier, case aide, and catering helper. Tr. 1161-62. With the added limitation of ability to do simple tasks with minimal interaction with the public and occasional casual interaction with co-employees, the worker could not do any of Jones's past work. Tr. 1162. However, the worker could perform two jobs as small products assembler and electronics worker. Tr. 1162-163. When the ALJ then added the limitation of work at low level of pressure, the VE noted that the latter two jobs were production-paced with a significant amount of stress. Tr. 1163. However, the jobs of price marker, laundry folder, and office helper would be suitable. Tr. 1163.

5 - FINDINGS AND RECOMMENDATION

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of no less than 12 months[.]" 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert denied*, 517 US 1122 (1996) (citations omitted). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR § 416.920; *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999).

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled. If not, then the Commissioner proceeds to step two. 20 CFR § 416.920(b).

At step two, the Commissioner determines whether the claimant has one or more severe impairments. If not, the claimant is not disabled. If the claimant has a severe impairment, then the Commissioner proceeds to step three. 20 CFR § 416.920(c).

At step three, the Commissioner determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 CFR Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). If so, the claimant is disabled. If the impairment does not meet or equal one of the listed impairments, then the Commissioner proceeds to step four. 20 CFR § 416.920(d).

If the adjudication proceeds beyond step three, the Commissioner must determine the claimant's residual functional capacity ("RFC"). The RFC is an assessment of the sustained work-related activities the claimant can still perform on a regular and continuing basis, despite

the limitations imposed by his or her impairments. 20 CFR §§ 416.920(e), 416.945; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the Commissioner determines whether the claimant is able to perform work she has done in the past. If so, the claimant is not disabled. If the claimant demonstrates he or she cannot perform work done in the past, the Commissioner proceeds to step five. 20 CFR § 416.920(e).

Finally, at step five, the Commissioner determines whether the claimant is able to perform any other work. If not, the claimant is disabled. If so, the Commissioner must show a significant number of jobs exist in the national economy that the claimant can perform. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can perform, then the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 CFR § 416.920(f).

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. However, at step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id.*

## ALJ'S FINDINGS

At step one, the ALJ concluded that Jones has not engaged in substantial gainful activity since January 20, 2004, the date her application was protectively filed. Tr. 32-33.

At step two, the ALJ determined that Jones has the severe impairments of alcoholism and drug addiction, a depressive disorder with anxiety, and degenerative disc disease of the lumbar spine. Tr. 33-34.

7 - FINDINGS AND RECOMMENDATION

At step three, the ALJ concluded that Jones does not have an impairment or combination of impairments that meets or equals any of the listed impairments. Tr. 34-35. The ALJ found that Jones has the RFC to perform light work as defined by 20 CFR 416.967(b), except she can only occasionally engage in kneeling, crouching, crawling, stooping, or climbing ramps or stairs. She can never engage in climbing ladders, ropes, or scaffolds. Tr. 35. She is limited to work involving simple, routine tasks, little change in expectations, minimal interaction with the public, and occasional, causal interaction with co-employees. *Id.*

At step four, the ALJ found that Jones had no past relevant work. Tr. 40.

At step five, based on the testimony of a VE, the ALJ concluded that considering Jones's age, education, and RFC, she was capable of performing the unskilled light jobs of electronics worker (DOT No. 726.687-010), price marker (DOT No. 209.587-034), laundry folder (DOT No. 369.687-018), and office helper (DOT No. 239.567-010).[5] Tr. 41.

Accordingly, the ALJ concluded that Jones was not disabled at any point through the date of the decision on June 27, 2008. Tr. 41.

## STANDARD OF REVIEW

District courts have the power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the case. 42 USC § 405(g). The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir), *cert denied*, 531 US 1038 (2000). The issue turns on the utility of further proceedings. *Id*.

The Commissioner's decision must be affirmed if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC

---

[5] "The Dictionary of Occupational Titles ('DOT') includes information about jobs (classified by their exertional and skill requirements) that exist in the national economy." 20 CFR § 416.969.

§ 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews*, 53 F3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986) (citations omitted).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  *Andrews*, 53 F3d at 1039-40.

## FINDINGS

### I. Steps Two and Three Errors

At step two, the ALJ noted that the "psychological evaluations performed in February 2000, November 2001, and May 2002 resulted in diagnoses of history of polysubstance abuse/dependence; a schizoaffective disorder; a recurrent major depressive disorder; dysthymia; a posttraumatic stress disorder (PTSD), chronic; and dependent and borderline personality disorder which were found to result in significant functional limitations."  Tr. 33.  However, since January 20, 2004, the ALJ found that Jones only had the severe mental impairments of alcoholism and drug addiction and a depressive disorder with anxiety.  *Id.*  At step three, the ALJ then rated the degree of limitation of the mental impairments in the four required functional areas and concluded that they failed, either singly or in combination, to meet the criteria of Listings 12.04 (Affective Disorders) or 12.09 (Substance Addiction Disorders).  Tr. 34-35.  Jones argues the ALJ erred by not evaluating the severity of all of her mental impairments with the required psychiatric review technique.

To evaluate the severity of a mental impairment, the ALJ must follow a special psychiatric review technique.  20 CFR § 416.920a.  Specifically, the reviewer must determine

whether an applicant has a medically determinable mental impairment (20 CFR § 416.920a(b)), rate the degree of functional limitation for four functional areas (20 CFR § 416.920a(c)), determine the severity of the mental impairment (in part based on the degree of functional limitation) (20 CFR§ 416.920a(c)(1)), and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder (20 CFR§ 416.920a(c)(2)).

At the first two levels of review by the agency, this technique is documented in a form referred to as the Psychiatric Review Technique Form ("PRTF").  20 CFR § 416.920a(e). However, at subsequent hearings before an ALJ or the Appeals Council, the Commissioner must "document application of the technique in the decision."  *Id.*  Specifically, "the written decision must incorporate the pertinent findings and conclusions based on the technique" and "must include a specific finding as to the degree of limitation in each of the functional areas."  20 CFR § 416.920a(e)(4) (emphasis added); see also Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed Reg 50,746, 50,757–58 (Aug. 21, 2000) (to be codified at 20 CFR pt. 404 & 416) ("The primary purpose of the final rules is to describe the technique, as distinct from the [PRTF], and to require the use of the technique in all determinations and decisions at all levels of the administrative review process . . . ."). Written decisions at the ALJ and Appeals Council levels should contain a "narrative rationale," instead of the "checklist of . . . conclusions" found in a PRTF.  See 65 Fed Reg, at 50,757–58. "An ALJ's failure to comply with [20 CFR § 416.920a] is not harmless if the claimant has a 'colorable claim of mental impairment.'"  *Keyser v. SSA*, 648 F3d 721, 726 (9th Cir 2011), citing *Gutierrez v. Apfel*, 199 F3d 1048, 1051 (9th Cir 2000), *superseded by regulation as stated in Blackmon v. Astrue*, 719 F Supp2d 80, 92 (D DC 2010).

As to the two mental impairments found to be severe (alcoholism and drug addiction and a depressive disorder with anxiety), the ALJ did rate Jones's degree of limitation in the four functional areas. Tr. 34-35. However, Jones argues that the ALJ erred by failing to find that her other three previously identified mental impairments (schizoaffective disorder, PTSD and dependent and borderline personality disorders) were severe impairments and to evaluate their degree of limitation.

The Commissioner responds that the ALJ was not obligated to consider any records prior to January 20, 2004, and points out that in the psychiatric evaluation performed in June 2004, Dr. Essink did not find that Jones suffered from those previously identified mental impairments. In particular, as to PTSD, Dr. Essink concluded that Jones "does not endorse prominent avoidant symptoms of PTSD currently" and may have met the PTSD criteria "in the past . . . but she currently does not meet the criteria for this disorder." Tr. 750.

Although the relevant time period begins on January 20, 2004, Jones suffered from several mental impairments that were sufficiently significant in severity to warrant a disability finding from January 11, 2002, through May 1, 2003. Although she was found to have medically improved by May 1, 2003, mental illness is a condition that may wax and wane over time, as evidenced by Jones's hospitalization in January 2005. As Jones concedes, this is not a cessation case because she did not appeal the prior denial of SSI and simply reapplied. However, her current application alleges symptoms that relate back to her earlier records. Even if the ALJ could exclude PTSD based on Dr. Essink's findings, she failed to explain why she failed to find that the other mental impairments of schizoaffective disorder and dependent and borderline personality disorders were not severe. By wholly disregarding those impairments, which were

11 - FINDINGS AND RECOMMENDATION

previously found to be severe, and not evaluating them using the special psychiatric review technique, the ALJ erred.

## II. Pre-January 2004 Medical Records

Jones also argues that at least six medical records and reports were not even mentioned by the ALJ.  These records are from:  Paul Okamoto, D.C., a treating chiropractor, dated May and June 1996 (Tr. 51-54); Julia Perkins, Ph.D., an examining psychologist, dated February 26, 2000 (Tr. 655-62); James Bryan, Ph.D., an examining psychologist, dated November 9, 2001 (Tr. 666-73); Robert Berselli, M.D., an examining physician, dated May 13, 2002 (Tr. 674-76); Frank Colistro, Ed.D., an examining psychologist, dated May 30, 2002 (Tr. 677-80), and Annie Aronson, M.S., dated February 16, 2003 (Tr. 699).

The ALJ does not explain why she disregarded these medical records.  Presumably she deemed them irrelevant because they all predate the protective filing date of January 20, 2004.  However, unlike a Title II claim, Title XVI claims are not contingent on a date last insured.  Moreover, at least some of these records are mentioned by the DDS reviewer in August 2005.  Tr. 959-60.  And, as previously discussed, medical records relevant to Jones's ongoing mental health condition are relevant and should be considered.  In fact, the ALJ herself selectively cited medical records from the November 2002 psychiatric in support of her lack of credibility determination.  Tr. 38, 691.

The ALJ has a duty to fully and fairly develop the record.  *Tonapetyan v. Halter*, 242 F3d 1144, 1150 (9th Cir 2001).  That responsibility is heightened when the claimant is unrepresented and suffers a mental impairment.  *See Celaya v. Baiter*, 332 F3d 1177, 1183 (9th Cir 2003); *Higbee v. Sullivan*, 975 F2d 558, 561 (9th Cir 1992); *Thompson v. Sullivan*, 933 F2d 581, 586 (7th Cir 1991) ("When a claimant is both unrepresented and suffers from a mental impairment . . . the

ALJ's duty to carefully develop the record is even greater."). Given that Jones suffers from mental impairments and was unrepresented during the hearing, the ALJ erred by not considering all of the medical evidence to determine if Jones was better or worse than when her SSI benefits ceased in 2003.

### III. Credibility Findings

Jones next contests the manner in which the ALJ analyzed her credibility.

#### A. Legal Standards

The ALJ must consider all symptoms and pain which can "reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 CFR § 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue,* 504 F3d 1028, 1036 (9th Cir 2007), citing *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995), citing *Bunnell v. Sullivan*, 947 F2d 341, 345-46 (9th 1991) (*en banc*). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not

13 - FINDINGS AND RECOMMENDATION

substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 883 (9th Cir 2006).

> B. <u>Reverse Analysis</u>

With respect to Jones's credibility, the ALJ made the following statement:

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

Tr. 36.

Jones argues that this statement reverses the manner in which an ALJ considers a claimant's credibility. The ALJ must consider a claimant's symptom testimony in assessing her RFC. 20 CFR § 416.945(a)(3); SSR 96-8p, at *7 (available at 1996 WL 374184). Dismissing a claimant's credibility because it is inconsistent with a conclusion that must itself address the claimant's credibility is circular reasoning. *See Carlson v. Astrue*, 682 F Supp2d 1156, 1167 (D Or 2010).

However, Jones misreads the ALJ's statement. As this court noted in *Hodgson v. Astrue,* Case No. 10-cv-6261-ST, 2011 WL 4852307, at *7 (D Or Sept. 14, 2011), "[t]he wording is admittedly confusing and not as clear as it should be. Nonetheless, it simply conveys the general concept that the RFC assessment includes those statements by [the claimant] concerning her symptoms found credible by the ALJ and excludes her other statements that he found not credible." As in *Hodgson,* the ALJ was not communicating any reliance upon her own RFC assessment to find Jones not credible. Instead, in the paragraphs following this summary statement, the ALJ set forth the reasons on which she relied to reject the extent of Jones's alleged limitations.

The ALJ concurrently discussed Jones's medical records, evidence of "exaggeration of symptoms," and her extensive activities since January 2004, including helping care for her grandson and participating in food preparation while in residential treatment, to support her credibility determination. Tr. 38. Such citations, in concert, are appropriate to analyze a claimant's credibility. *Smolen*, 80 F3d at 1284. Jones does not contest that any of those cited reasons. Therefore, the ALJ did not err in this aspect of her analysis of Jones's credibility.

### C. Treatment Compliance

Jones also argues that the ALJ erred by finding that her credibility "is reduced by evidence that she has not been fully compliant with treatment recommendations." Tr. 37.

The record supports the conclusion that Jones was not regularly treating her mental illness. At the June 2004 evaluation, Dr. Essink expressed concern that Jones was not receiving any psychiatric treatment. Tr. 745. Jones failed to show at appointments in December 2004 and January 2005. Tr. 831. She had also stopped taking her antidepressants when she was admitted to the emergency room in January 2005. Tr. 783.

The ALJ generally is permitted to draw an adverse inference as to the credibility of a claimant's disabling symptoms from an unexplained failure to seek treatment. *Bruton v. Massanari*, 268 F3d 824, 828 (9th Cir 2001). However, when a claimant suffers from mental illness, the Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F3d 1294, 1299–1300 (9th Cir 1999), quoting *Nguyen v. Chater*, 100 F3d 1462, 1465 (9th Cir 1996); *cf. Fair v. Bowen*, 885 F2d 597, 603 (9th Cir 1989) (noting that one type of evidence that can serve to discredit a

15 - FINDINGS AND RECOMMENDATION

plaintiff's pain testimony is "an unexplained, or inadequately explained, failure to seek treatment"). Therefore, the ALJ erred by considering Jones's lack of compliance with her recommended treatment to reduce her credibility.

### C. Conclusion

This court may affirm an ALJ's overall credibility determination while declining to affirm one aspect of it. *Batson v. Barnhart*, 359 F3d 1190, 1197 (9th Cir 2004). Although the ALJ erred by considering Jones's treatment compliance, the ALJ's remaining credibility conclusions are based upon the record and the proper legal standards. Therefore, the ALJ's credibility conclusion is affirmed.

## IV. Hypothetical Question to VE

Jones argues the ALJ's hypothetical question to the VE was incomplete because it did not include the exact wording from her RFC determination by omitting the limitations of "routine tasks" and "little change in expectations."

At step five, the Commissioner must show that the claimant can perform other work which exists in the national economy. *Andrews*, 53 F3d at 1043. The Commissioner can satisfy this burden by eliciting the testimony of a VE regarding jobs the claimant would be able to perform, given her RFC. *Tackett*, 180 F3d at 1101. An ALJ must propose a hypothetical that sets forth all the reliable limitations and restrictions of a claimant that are supported by substantial evidence. *Roberts*, 66 F3d at 184. The hypothetical must be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F3d 1094, 1101 (9th Cir 1999). "If a hypothetical fails to reflect each of the claimant's limitations supported by 'substantial evidence,' the expert's answer has no evidentiary value." *Osenbrock v. Apfel*, 240 F3d 1157, 1167 (9th Cir 2001), citing *Gallant v. Heckler*, 753 F2d 1450, 1456 (9th Cir 1984).

16 - FINDINGS AND RECOMMENDATION

The ALJ limited Jones "to work involving simple, *routine tasks*; *little change in expectations*; minimal interaction with the public; and occasional, causal interaction with co-employees." Tr. 35 (emphasis added). The ALJ's question to the VE did not include the need for "routine tasks" and substituted the limitation of "low level of pressure" for "little change in expectations." However, the ALJ's omissions did not affect the result of the case and should be considered harmless. See *Parra v. Astrue*, 481 F3d 742, 747 (9th Cir 2007).

First, the jobs identified by the VE in response to the hypothetical question include routine work settings. She testified that Jones would be able to perform the jobs of electronics worker (DOT No. 726.687-010), price marker (DOT No. 209.587-034), laundry folder (DOT No. 369.687-018), and office helper (DOT No. 239.567-010). The office helper position lists many possible duties and potential interaction with the public and others. DOT No. 239.567-010. However, this job and the others are listed as "unskilled," which includes "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a *routine* work setting." SSR 85-15 at *4, 1985 WL 56857 (emphasis added). "Routine work setting" and "routine tasks" are sufficiently similar such that the hypothetical question accurately reflects Jones's RFC limitations.

Second, given the ALJ's conclusions and the record, a reasonable inference can be drawn that the ALJ deemed "low level of pressure" and "little change in expectations" to be equivalent. See *Magallanes v. Bowen*, 881 F2d 747, 755 (9th Cir 1989) (explaining that the reviewing court is not deprived of its faculties for drawing specific and legitimate inferences from the ALJ's opinion). The ALJ stated that "regarding limitations resulting from mental impairments, . . . little change in expectations . . . is generally consistent with the opinion of [DDS] psychological

consultants," citing the opinions by Ben Kuhner, M.D., and Anita M. Peterson, Ph.D.  Tr. 39, 776, 860.  Drs. Kuhner and Peterson similarly described Jones's limitations as to adaptation, as noted the Functional Capacity Assessment.  Dr. Kuhner stated that Jones "is not impaired in adaptive functioning as needed for employment in a job requiring routine simple tasks away w[ith] little change in expectations from day to day."  Tr. 776.  Dr. Peterson similarly stated that Jones "can adapt to low-pressure work in which changes to routine and schedule are infrequent."  Tr. 860.  Because the ALJ specifically stated her RFC was consistent with these two doctors' opinions, her use of the description "low pressure work" in the hypothetical is harmless error.

## VI.    Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman*, 211 F3d at 1178.  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision.  *Strauss v. Comm'r*, 635 F3d 1135, 1138-39 (9th Cir 2011), quoting *Benecke v. Barnhart*, 379 F3d 587, 593 (9th Cir 2004).  The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act.  *Id* at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."  *Id.*  The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in

determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F3d 871, 876 (9th Cir 2003), citing *Bunnell*, 947 F2d at 348. The reviewing court declines to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F3d 1032, 1035 (9th Cir 2010).

As discussed above, the ALJ erred by failing to consider Jones's full medical record regarding her mental illness. Therefore, the ALJ's subsequent RFC assessment and hypothetical questions to the vocational expert at step five in the sequential disability analysis are not based upon the proper legal standards. However, it is not clear from the record that crediting the omitted evidence establishes that Jones is disabled at step five in the sequential proceedings. Moreover, Jones was unrepresented at her hearing and was unable to advance arguments as to how the medical evidence favors her.

In such instances, awarding benefits is inappropriate. *Harman*, 211 F3d at 1180; *see also Luna*, 623 F3d at 1035. The matter must be remanded for further proceedings to develop the record regarding Jones's mental impairments, considering the totality of the medical record both before and after January 20, 2004. If necessary, the ALJ must then revise her RFC determination. Finally, the ALJ must make adequate step four and five findings incorporating any revised findings.

## RECOMMENDATION

For these reasons, the Commissioner's final decision should be REVERSED and REMANDED pursuant to sentence four of 42 USC § 405(g) for further proceedings consistent with this Findings and Recommendation.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due Thursday, February 09, 2012.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 23 day of January, 2012.

                                                                    s/ Janice M. Stewart
                                                                    Janice M. Stewart
                                                                    United States Magistrate Judge

20 - FINDINGS AND RECOMMENDATION